KUHN, J.
 

 | .¿Appellants, State of Louisiana, Louisiana State Police, Video Gaming Division (the Division), and Louisiana Gaming Control Board (the Board), appeal the trial court’s judgment on judicial review, which reversed the Board’s decision to revoke the three licenses for video draw poker devices granted to appellee, the Guarisco Company, Inc. (Guarisco). For the reasons that follow, we affirm the trial court’s judgment.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 Guarisco owns, in a single building, the side-by-side establishments of Sports City Deli, Soup & Salad Kitchen, and Dawg & Brew (the establishments). Guarisco has owned and operated video draw poker devices in each establishment since 1997. According to a Division compliance audit dated August 9, 2006, each business has its own separate entrance with no interior access between the establishments. Each establishment keeps separate sales records and has personnel who work solely for it. The three establishments were granted Class A-General retail alcoholic beverage permits to sell beer for on-premises consumption, and maintained financial records that segregated the beer sales from all other sales on the premises. Based on the auditor’s analysis of sales data obtained from Guarisco, the auditor concluded that none of the establishments met the requirements for issuance of a video draw poker license.
 

 Administrative action was undertaken against Guarisco based on the recommendation of the Division. After a series of hearings, a hearing officer concluded that the establishments were in compliance with the statutory |3requirements for issuance of a video draw poker license.
 
 [1]
 
 After a hearing, the Board reversed the hearing officer’s decision and revoked the licenses of the establishments. Guarisco’s subsequent motion for rehearing was denied. Guarisco then filed a petition for judicial review. After a hearing, the district court reversed the Board’s decision to revoke the establishments’ licenses and reinstated the decision of the hearing officer. This appeal followed.
 

 
 *253
 
 On appeal, appellants urge that the establishments fail to conform to the requirements for issuance of video draw poker licenses under the plain language of the law and, therefore, the district court erred in reversing the Board’s decision.
 

 DISCUSSION
 

 Disputed gaming matters are to be heard by a hearing officer at a public hearing conducted in accordance with the adjudication provisions of the Administrative Procedure Act (APA). La. R.S. 27:25 B(l). Either party to such a hearing may appeal the decision of the hearing officer to the Board. La. R.S. 27:25 E. Appeals from decisions of the Board are made to the Nineteenth Judicial District Court and are reviewed solely on the record. La. R.S. 27:26.
 

 The APA specifies that judicial review shall be confined to the record, as developed in the administrative proceedings. La. R.S. 49:964 F. The district court may reverse or modify the agency decision if substantial rights of the appellant are prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in |4excess of the agency’s statutory authority; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary, capricious, or characterized by an abuse of discretion or clearly unwarranted exercise of discretion; or (6) not supported and sustainable by a preponderance of evidence as determined by the reviewing court. La. R.S. 49:964 G. On legal issues, the reviewing court gives no special weight to the findings of the administrative tribunal, but conducts a
 
 de novo
 
 review of questions of law and renders judgment on the record
 
 J. Manoco, Inc. v. State ex rel. Louisiana Gaming Control Bd.,
 
 98-1412, p. 6 (La.App. 1st Cir.12/28/99), 756 So.2d 430, 434,
 
 writ denied,
 
 2000-0248 (La.3/24/00), 758 So.2d 155.
 

 According to La. R.S. 27:306 A(2)(b), a person who is the owner of more than one bar which is located within a single building or structure, and who has been granted a Class A-General retail permit
 
 [2]
 
 to sell alcoholic beverages for consumption on the premises of each such facility may make available for play not more than three video draw poker devices at each separate facility, not to exceed a total of nine video draw poker devices, if that person and each facility complies with all other requirements of the Video Draw Poker Devices Control Law.
 
 [3]
 
 And La. R.S. 27:308.2 states that the Board shall initiate an administrative action and may revoke the license of any person for the failure to meet the requirements for issuance of a license as provided in the Video Draw Poker Devices Control Law.
 

 | Jn support of their contention that Guarisco failed to comply with the requirements for issuance of its licenses, appellants rely on La. R.S. 27:301 B(12), which sets forth in relevant part:
 

 “[B]ar, tavern, cocktail lounge, or club” means an operating establishment primarily engaged in ... the sale of alcoholic beverages for on-premises or immediate consumption that meets all of the following criteria:
 

 (a) Has been granted a Class A-General retail permit ... for the sale of alcoholic beverages for on-premises consumption.
 

 
 *254
 
 (b) ... [Pjrepares, dispenses, and sells alcoholic beverages for on-premises consumption during the hours it is open to the public.
 

 (c) Maintains financial records that segregate the sales of alcoholic beverages prepared for on-premises or immediate consumption and sales of food prepared for on-premises or immediate consumption from any other sales on the premises.
 

 (d) ... [I]t must have a person whose primary duty is tending bar on duty while the establishment is open for business and have a permanently affixed wet bar facility, including plumbing and sinks.
 

 Appellants do not dispute that the Guaris-co establishments conform to the requirements of (a) through (d).
 
 [4]
 
 Instead, they focus their complaint on the requirement that the establishment be “primarily engaged” in the sale of alcohol, | ^emphasizing that the compliance audit established 94% of the combined income for the three establishments was derived from video poker and only 2% was from the sale of alcohol.
 
 [5]
 
 Because the video poker proceeds of each establishment far exceed the proceeds for alcoholic beverages, appellants contend that under the plain language of La. R.S. 27:301 B(12), the establishments are not primarily engaged in the sale of alcoholic beverages.
 

 Laws on the same subject matter must be interpreted with reference to each other. La. C.C. art. 13. The meaning and intent of a law is determined by consideration of the law in its entirety and all other laws on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the law and with the obvious intent of the lawmaker in enacting it.
 
 Stogner v. Stogner,
 
 98-3044, p. 5 (La.7/7/99), 739 So.2d 762, 766.
 

 Thus, La. R.S. 27:301 B(12) cannot be read in isolation but must be read
 
 in pari materia
 
 with the other statutes contained in the Video Draw Poker Devices Control Law. La. R.S. 27:308.2 A(2) provides the Board with the authority to initiate an
 
 *255
 
 administrative action and to revoke the license of any person that fails to meet the requirements for issuance of a license. At the time an applicant requests a license, obviously the establishment does not derive any income from video poker since the business would not have any video draw poker devices from |7which to generate such income. The Board has pointed to, and we have found, no authority for the Board to bring this action to revoke Guar-isco’s licenses except that provided by § 308.2 A(2), which is limited to instances where the person holding the license has failed to meet “the requirements for
 
 issuance
 
 of a license.” If at the time of issuance of the license, proceeds derived from video draw poker devices are necessarily excluded from the determination of whether an establishment is primarily engaged in the sale of alcohol, then the Board’s review of the applicant’s compliance with § 301 B(12) (providing the requirements for issuance of a license) under § 308.2 A(2) should likewise exclude consideration of the proceeds from video draw poker devices. To hold otherwise would be to ignore the language of La. R.S. 27:308.2. Because our construction of the two statutes is consistent with the express terms of the law, we conclude that the hearing officer correctly found “the character of a business must be determined [by] what it sells- [I]f [an establishment were] licensed as a bar, and the sales were 90% shoes, it would be folly to contend it is a bar. The comparison that defines the character of an establishment comes only from [the] goods sold, and in these businesses, the primary goods sold is beer.”
 

 We find further support for our construction in our review of the legislative history of § 301 B(12). By La. Acts 2005, No. 61, § 1, the legislature amended § 301 B(12) to expand the type of establishments eligible for video draw poker licenses to include bars, taverns, cocktail lounges, and clubs. Prior to that, only restaurants were eligible establishments under § 301 B(12) and, in addition to the requirement that restaurants be primarily engaged in the retail sale of prepared foods for on-premises or immediate consumption, § 301 B(12) included in its ^compliance criteria that the restaurant derive at least sixty percent of its monthly gross revenues from the sale of foocl, food items, and nonalcoholic beverages. That requirement was eliminated from the subsequent legislation. We find noteworthy the House Committee on the Administration of Criminal Justice Minutes of Meeting for the 2004 Regular Session dated May 12, 2004 in which Representative Townsend proposed in House Bill No. 1202 that the minimum percentage of revenues from the sales of food, food items, and nonalcoholic beverages necessary for restaurant compliance be reduced from sixty percent to fifty percent. The committee members present at the meeting were expressly advised by Paul Ed-monson of State Police Video Gaming that “the proposed changes would dilute current law and there may become establishments that are restaurants in name only.” Nevertheless, the legislature enacted House Bill 1202 as La. Acts 2004, No. 867, § 1. And subsequently, by La. Acts 2005, No. 61, § 1, which expanded the type of establishments eligible to own and operate video draw poker gaming devices, it eliminated altogether the criterion that an establishment derive a minimum percentage of revenues from the sales of food or alcohol.
 

 In light of the legislative history of § 301 B(12), it is evident that the legislature did not intend for an establishment to derive any particular percentage of its monthly gross revenues from the sale of alcohol to determine whether a bar is primarily engaged in the sale of alcoholic beverages for on-premises or immediate
 
 *256
 
 consumption. Because the Board’s review under § 308.2 A(2) of whether the establishments meet the requirements for issuance of a license set forth in § 301 B(12) excludes video draw poker devices proceeds from the determination of whether the establishments are primarily engaged in the sale of | flalcoholic beverages for on-premises or immediate consumption, the Board’s revocation of Guarisco’s video draw poker licenses was a clearly unwarranted exercise of discretion in excess of its statutory authority.
 
 See
 
 La. R.S. 49:964 G(2) & (5). And because the substantial rights of Guarisco were prejudiced by the revocation of its licenses, the district court correctly reversed the Board’s decision.
 

 DECREE
 

 For all these reasons, we affirm the district court’s judgment, which reverses the decision of the Board and reinstates that of the hearing officer. Appeal costs in the amount of $692.00 are assessed against appellants, State of Louisiana, Louisiana State Police, Video Gaming Division, and Louisiana Gaming Control Board.
 

 AFFIRMED.
 

 [1]
 

 . The hearing officer concluded that Guarisco had violated LAC 42:XI.2411.A.10.b.i and ii (relative to maintenance of employee and tax records) and assessed a $1,000 civil penalty against each of the establishments. This ruling was not appealed.
 

 [2]
 

 . See Part II of Chapter 1 or Part II of Chapter 2 of Title 26 of the Louisiana Revised Statutes.
 

 [3]
 

 . The Video Draw Poker Devices Control Law is set forth in La. R.S. 27:301-326.
 

 [4]
 

 . In their brief, appellants expressly concede that the establishments meet the criteria of La. R.S. 27:301 B(12)(b) and (c). Insofar as subsection (a), the compliance audit and the evidence admitted at the administrative hearings show that each of the establishments have been granted Class A-General retail permits for the sale of alcoholic beverages on their premises, and on appeal, while appellants assert that the regulatory authority that issues retail permits for the sale of alcohol cannot confer video draw poker device licenses to the establishments, they do not dispute that Guarisco has been granted those permits. Lastly, the hearing officer found that each establishment had a person whose primary duty was tending bar. He also determined each establishment had a sink located within the distance of 4 to 8 feet of the bar and because each establishment was permitted for and sold only beer, a sink under the bar was an unnecessary adjunct to the business. On appeal, although appellants do not expressly concede compliance with La. R.S. 27:301 B(12)(d), they do not raise any arguments or assign error to these findings by the hearing officer, implicitly adopted by the district court in its reversal of the Board’s decision to revoke Guarisco’s licenses, and for which we find no manifest error. La. R.S. 49:964 G;
 
 see Stobart v. State,
 
 617 So.2d 880, 882 (La.1993).
 

 [5]
 

 . Specifically, based on sales data obtained during the audit period of January 1 through March 31, 2006, the combined
 
 income
 
 from the establishments (derived by taking the net device revenue and subtracting from that the franchise fees of 26% and device operations fees of $250/machine/year), the auditor found $34,952.51 of income was from video poker and $707 from the sale of beer. The remaining percentages were generated from tire sale of nonalcoholic beverages and food delivered to the establishments from Guarisco’s restaurant located in a separate facility situated in front of the multiple-business building.